No. 24-1367

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

JOE MANIS,

Plaintiff-Appellant,

v.

U.S. DEPARTMENT OF AGRICULTURE, et al.,

Defendants-Appellees.

———————————

On Appeal from the United States District Court
for the Middle District of North Carolina

———————————

**BRIEF FOR APPELLEES**

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

SANDRA J. HAIRSTON
  *United States Attorney*

JOSHUA M. SALZMAN
GRAHAM WHITE
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7230*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4052*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ...................................................................... 1

STATEMENT OF THE ISSUE ........................................................................... 1

PERTINENT STATUTES AND REGULATIONS ...................................................... 2

STATEMENT OF THE CASE ............................................................................ 2

    A.    Statutory And Constitutional Background .................................................. 2

    B.    Prior Proceedings ................................................................................ 4

SUMMARY OF ARGUMENT ............................................................................ 8

STANDARD OF REVIEW ............................................................................... 12

ARGUMENT ............................................................................................... 12

I.    Plaintiff has failed to show that he is likely to succeed on the merits. ............... 12

    A.    The Judicial Officer is a properly appointed inferior officer. .................. 12

    B.    The removal protections for USDA ALJs are constitutional. ................. 23

    C.    The USDA's adjudication process does not violate the
          Seventh Amendment or Article III. ........................................... 27

II.    Plaintiff fails to satisfy the remaining preliminary injunction factors. ................ 31

CONCLUSION ............................................................................................ 35

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                    **Page(s)**

*Apex Express Corp., In re,*
  190 F.3d 624 (4th Cir. 1999) ............................................................... 28

*Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n,*
  518 F.2d 990 (5th Cir. 1975), *aff'd,*
  430 U.S. 442 (1977) ...........................................................28, 29, 30

*Axon Enter., Inc. v. FTC,*
  598 U.S. 175 (2023) ............................................................... 32

*Bahlul v. United States,*
  77 F.4th 918 (D.C. Cir. 2023) ............................................................... 16

*Bowsher v. Synar,*
  478 U.S. 714 (1986) ............................................................... 14

*Burnap v. United States,*
  252 U.S. 512 (1920) ...........................................................20, 21

*Calcutt v. Federal Deposit Ins. Corp.,*
  37 F.4th 293 (6th Cir. 2022) *summ. rev'd on other grounds,*
  598 U.S. 623 (2023) ...........................................................24-25

*Citibank, N.A. v. Citytrust,*
  756 F.2d 273 (2d Cir. 1985) ............................................................... 33

*Collins v. Yellen,*
  141 S. Ct. 1761 (2021) ............................................................... 24

*Crowell v. Benson,*
  285 U.S. 22 (1932) ............................................................... 29

*Decker Coal Co. v. Pehringer,*
  8 F.4th 1123 (9th Cir. 2021) ....................................... 7, 10, 24, 34

*Di Biase v. SPX Corp.,*
  872 F.3d 224 (4th Cir. 2017) ............................................................... 12

*Direx Isr., Ltd. v. Breakthrough Med. Corp.,*
    952 F.2d 802 (4th Cir. 1991) ................................................................ 32

*Duenas v. Garland,*
    78 F.4th 1069 (9th Cir. 2023) ............................................................... 20

*Edmond v. United States,*
    520 U.S. 651 (1997) ............................................ 3, 5, 9, 13, 14, 16

*Fleming v. USDA,*
    987 F.3d 1093 (D.C. Cir. 2021) ..................................7, 10, 13, 14, 21, 22

*Frazier v. Prince George's County,*
    86 F.4th 537 (4th Cir. 2023) ................................................................ 31

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010) ....................................................................25, 26, 27

*Gordon v. Holder,*
    632 F.3d 722 (D.C. Cir. 2011) ............................................................. 33

*Grand Jury Investigation, In re,*
    916 F.3d 1047 (D.C. Cir. 2019) ........................................................... 14

*Granfinanciera, S.A. v. Nordberg,*
    492 U.S. 33 (1989) ..........................................................................8, 28, 30

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.,*
    684 F.3d 1332 (D.C. Cir. 2012) ........................................................... 15

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023) ........................25, 30

*K & R Contractors, LLC v. Keene,*
    86 F.4th 135 (4th Cir. 2023) .................................................... 10, 13, 23, 24

*Leachco, Inc. v. Consumer Prod. Safety Comm'n,*
    -- F.4th --, 2024 WL 2822147 (10th Cir. June 4, 2024) ............................ 10, 24, 26, 32

*League of Women Voters of U.S. v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016) .......................................................................... 32

*Lucia v. SEC,*
    585 U.S. 237 (2018) ..................................................................................... 20

*Maryland v. King,*
    567 U.S. 1301 (2012) ................................................................................... 34

*McConnell v. USDA,*
    No. 4:23-cv-24, 2023 WL 5963782 (E.D. Tenn. Sept. 13, 2023) ........................ 31, 34

*Meta Platforms, Inc. v. FTC,*
    Civil Action No. 23-3562 (RDM),
    2024 WL 1121424 (D.D.C. Mar. 15, 2024) ...................................................32-33

*Miranda v. Garland,*
    34 F.4th 338 (4th Cir. 2022) ....................................................................... 34, 35

*Morrison v. Olson,*
    487 U.S. 654 (1988) ..............................................................................15, 25, 26

*Nken v. Holder,*
    556 U.S. 418 (2009) ..................................................................................... 34

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,*
    584 U.S. 325 (2018) ..................................................................................... 28

*Palo Alto Networks, Inc., In re,*
    44 F.4th 1369 (Fed. Cir. 2022) ...................................................................... 18

*Quince Orchard Valley Citizens Ass'n v. Hodel,*
    872 F.2d 75 (4th Cir. 1989) ........................................................................... 33

*Samson v. Murray,*
    415 U.S. 61 (1974) ..................................................................................... 32

*Sasser v. Administrator, U.S. EPA,*
    990 F.2d 127 (4th Cir. 1993) ......................................................................28, 30

*Sealed Case, In re,*
829 F.2d 50 (D.C. Cir. 1987) ...................................................................... 20

*Sims v. Apfel,*
530 U.S. 103 (2000) ...................................................................................... 20

*Spaulding v. Wells Fargo Bank, N.A.,*
714 F.3d 769 (4th Cir. 2013) ...................................................................... 31

*SSA v. Levinson,*
2023 M.S.P.B. 20 (July 12, 2023) .............................................................. 26

*Stamper v. Secretary of Agric.,*
722 F.2d 1483 (9th Cir. 1984) ...................................................................... 2

*Stern v. Marshall,*
564 U.S. 462 (2011) ...................................................................................... 29

*United States v. Arthrex, Inc.,*
594 U.S. 1 (2021) ...................................................... 14, 16, 17, 18, 19, 22, 25

*United States v. Mitchell,*
39 F.3d 465 (4th Cir. 1994) .......................................................................... 19

*United States v. Perkins,*
116 U.S. 483 (1886) ...................................................................................... 25

*Utica Packing Co. v. Block,*
781 F.2d 71 (6th Cir. 1986) .......................................................................... 23

*Varnadore v. Secretary of Labor,*
141 F.3d 625 (6th Cir. 1998) ...................................................................... 20

*Winter v. Natural Res. Def. Council, Inc.,*
555 U.S. 7 (2008) .................................................................................. 8, 12, 31

*WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave,*
553 F.3d 292 (4th Cir. 2009) ...................................................................... 33

**U.S. Constitution:**

Art. II, § 2, cl. 2 ........................................................... 3, 6, 9, 12, 18

**Statutes:**

Horse Protection Act,
    15 U.S.C. §§ 1821-1831 ...................................................... 8
    15 U.S.C. § 1821(3) ........................................................ 1
    15 U.S.C. § 1822 ......................................................... 29
    15 U.S.C. § 1822(1) .................................................. 29, 31
    15 U.S.C. § 1824(2) ................................................... 2, 31
    15 U.S.C. § 1825(b)(1) .................................................. 1, 3
    15 U.S.C. § 1825(b)(2) .................................................. 1, 3
    15 U.S.C. § 1825(c) ...................................................... 3
    15 U.S.C. § 1828 ........................................................ 14

5 U.S.C. § 1202(d) ........................................................ 4, 26

5 U.S.C. § 3105 .......................................................... 20-21

5 U.S.C. § 7513(a) ...................................................... 16, 17

5 U.S.C. § 7521 ........................................................... 26

5 U.S.C. § 7521(a) ......................................................... 4

7 U.S.C. § 2204-2 ..................................... 4, 6, 9, 14, 19, 23

15 U.S.C. § 1528 .......................................................... 22

28 U.S.C. § 1292(a)(1) ..................................................... 1

28 U.S.C. § 1331 ........................................................... 1

35 U.S.C. § 6(c) .......................................................... 17

## Regulations:

5 C.F.R. § 930.204(a) ................................................................................................ 20

7 C.F.R. § 1.131 ............................................................................................... 14, 22

7 C.F.R. § 1.132 ................................................................................................... 3

7 C.F.R. §§ 1.141-1.142 .......................................................................................... 3

7 C.F.R. § 1.145 ................................................................................................... 3

7 C.F.R. § 1.145(a) ............................................................................................... 3

7 C.F.R. § 2.12 .......................................................................................... 13, 17, 22

7 C.F.R. § 2.35 .................................................................................................. 19

7 C.F.R. § 2.35(a) .............................................................................................. 13

7 C.F.R. § 2.35(a)(1)-(2) ....................................................................................... 3

8 C.F.R. § 1003.0(a) ........................................................................................... 19

8 C.F.R. § 1003.1 .............................................................................................. 19

## Legislative Material:

H.R. Rep. No. 91-1597 (1970) ........................................................................... 29, 34

## Other Authorities:

60 Fed. Reg. 8446 (Feb. 14, 1995) ....................................................................... 14

*Revised Statutes of the United States, Passed at the First Session of the Forty-Third Congress, 1873-'74* (2d ed. 1878) ....................................................................................... 21

## STATEMENT OF JURISDICTION

Plaintiff brought this action arising under the Constitution. JA6. On April 24, 2024, the district court entered a Memorandum Opinion and Order denying plaintiff's motion for a preliminary injunction. JA91. This Court thus has jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUE

More than 50 years ago, Congress enacted the Horse Protection Act to protect horses from an intentional practice designed to cause them "to suffer[] physical pain or distress, inflammation, or lameness," a practice the statute defines as "sor[ing]." 15 U.S.C. § 1821(3). The Act vests responsibility for enforcing its civil provisions in the U.S. Department of Agriculture (USDA). Before any penalty may be assessed under the Act, USDA must first provide an "opportunity for a hearing before the Secretary" and, if the agency ultimately determines that a violation has occurred, the violator is entitled to judicial review of the agency's determination. *Id.* § 1825(b)(1)-(2).

USDA initiated an enforcement proceeding to determine whether plaintiff-appellant Joe Manis violated the Act. Nearly ten months after that proceeding commenced, and only shortly before the hearing was set to begin, plaintiff brought this suit in district court seeking to have the proceeding enjoined under an array of constitutional theories. The district court denied plaintiff's motion for a preliminary injunction, holding that plaintiff failed to show he is likely to succeed on the merits of any of his claims.

The issue presented is whether the district court abused its discretion in denying plaintiff's motion for a preliminary injunction.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.      Statutory and Constitutional Background

**1.** "Tennessee Walking Horses have a high-stepping gait or 'walk,' achieved through selective breeding and training," and there are numerous show competitions in which the horses are judged on their distinctive walk. *Stamper v. Secretary of Agric.*, 722 F.2d 1483, 1484 (9th Cir. 1984). "Unfortunately, the 'walk' also can be created artificially in less talented horses by making the horse's forelimbs sore. . . . The sores can be produced by use of nails, tacks, injections, [and] blistering agents," which are "cruel to the animal and threaten the Walking Horse industry and the breed itself, because winning horses are highly valued as studs." *Id.* "To end this cruelty and to protect the breed's natural ability to 'walk' in its distinctive fashion, Congress enacted the 1970 Horse Protection Act, which imposes penalties for showing or exhibiting sore horses." *Id.*

The Act prohibits showing or exhibiting a sore horse in any horse show or exhibition and also prohibits entering a sore horse in such an event in order to show or exhibit the horse. 15 U.S.C. § 1824(2). The Secretary of Agriculture administers the Act and may adjudicate statutory violations after "notice and opportunity for a

hearing." *Id.* § 1825(b)(1).  If the Secretary determines that a person has violated the statute, he may impose a civil monetary penalty, *id.*, and may order the person disqualified from participating in horse shows and exhibitions, *id.* § 1825(c).

In administrative adjudications under the Act, the initial stage is assigned to an administrative law judge (ALJ) who holds a hearing and issues a decision.  7 C.F.R. §§ 1.141-1.142; *see also id.* § 1.132 (defining "Judge" as used in USDA regulations to mean an ALJ).  Any party who disagrees with the ALJ's decision may appeal to the USDA's Judicial Officer.  *Id.* § 1.145(a).  The Judicial Officer is appointed by the Secretary and exercises the Secretary's delegated authority to act as the decisionmaker in adjudicative proceedings under the Administrative Procedure Act, the Horse Protection Act, and other statutes.  *See id.* § 2.35(a)(1)-(2).  The Judicial Officer receives the parties' briefs, may hold oral argument, and issues a final decision on behalf of the Secretary that is subject to judicial review. 15 U.S.C. § 1825(b)(2); 7 C.F.R. § 1.145.

**2.**  The Appointments Clause of the Constitution prescribes the method by which officers of the United States may be appointed.  U.S. Const. art. II, § 2, cl. 2. That provision requires that so-called "principal officers," such as agency heads, must be appointed by the President and confirmed by the Senate, but it allows for subordinate officials, known as "inferior Officers," to be appointed by, among others, "the Heads of Departments" when authorized by law.  *See id.*; *see also Edmond v. United States*, 520 U.S. 651, 659-60 (1997).

3

USDA ALJs are employed by the Secretary of Agriculture, whom the President may remove at will. The Judicial Officer, who has been delegated the authority to review ALJ decisions, is removable at will by the Secretary (*i.e.*, the Department Head responsible for their appointment). *See* 7 U.S.C. § 2204-2.

USDA ALJs may be removed from office "only for good cause established and determined by the Merit Systems Protection Board" (MSPB). 5 U.S.C. § 7521(a). Members of the MSPB "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202(d).

## B.    Prior Proceedings

**1.**  In May 2023, USDA initiated an enforcement proceeding against plaintiff, alleging that he "allowed the entry of a horse he owned" in "a horse show in Chatham, Virginia, while the horse was sore." JA37. An ALJ hearing in the matter was scheduled for April 30, 2024. JA61-62.

In March 2024, more than nine months after the administrative complaint was filed and less than two months before the administrative hearing, plaintiff brought this action to enjoin the proceeding. JA5. Plaintiff alleged that the proceeding is unconstitutional because: (1) the USDA's Judicial Officer is a principal officer who has not been appointed by the President with Senate confirmation; (2) the statutory restrictions on the Secretary's ability to remove ALJs are unconstitutional; (3) the Seventh Amendment entitles plaintiff to a jury trial; and (4) the proceeding must be heard in an Article III court. JA5-6.

Plaintiff moved for both a temporary restraining order and a preliminary injunction the following week. JA31. The district court denied the motion in two separate orders. *See* JA82, JA91-92. First, the court denied plaintiff's request for a temporary restraining order, holding that plaintiff "failed to establish that he is likely to suffer irreparable harm absent a temporary restraining order" because he "has had ample time to ask this court to consider his constitutional challenges to the USDA's proceedings" but was dilatory. JA85. The court explained that plaintiff "has known that he may be subjected to an adjudication process he alleges unconstitutional since the USDA complaint against him was filed on May 19, 2023," but nonetheless "waited nearly ten months to file his [c]omplaint with this [C]ourt." JA85. It accordingly concluded that there was "no basis for granting relief" without hearing from the defendants. JA86 (quotation marks omitted).

The district court subsequently held a preliminary injunction hearing and then denied that aspect of the motion as well. JA91-92. The court held that plaintiff "fail[ed] to show a likelihood of success on the merits of each of his claims" and therefore did not address the remaining preliminary injunction factors. JA112.

The district court first held that the agency's Judicial Officer was a properly appointed inferior officer subject to the Secretary's control, rather than a principal officer who had not received necessary Senate confirmation. JA99-102. The court explained that under *Edmond*, 520 U.S. 651, courts consider whether a federal officer is a principal or inferior officer based on whether (1) the officer is bound to follow

5

agency regulations, (2) the officer can be removed at will, and (3) whether the officer's decisions can be reviewed within the agency. JA100. The court held that the Judicial Officer is an inferior officer because "the Secretary exercises control over the Judicial Officer both in his ability to promulgate regulations the Judicial Officer must follow as well as remove the Judicial Officer from his position should the Secretary choose to do so." JA101-102. The court added that "the fact that the Secretary cannot review the Judicial Officer's decisions does not defeat inferior-officer status" because *Edmond* does not turn "solely [on] whether the Secretary can review the Judicial Officer's decisions." JA101 (quotation marks omitted).

The district court next held that the Secretary properly created the Judicial Officer's role by regulation, rejecting plaintiff's categorical argument that all offices must be created by statute. JA103-104. The court explained that Congress "explicitly grant[ed] the Secretary authority to" create the office under 7 U.S.C. § 2204-2. JA104; *see* 7 U.S.C. § 2204-2 (authorizing the Secretary "to designate officers or employees of the Department to whom functions may be delegated"). The court concluded that this method of appointment is consistent with the Constitution, noting that the Appointments Clause permits inferior officers to be appointed by a Department Head if Congress "vested" that authority in him "by Law." JA104 (alteration omitted) (quotation marks omitted); *see* U.S. Const. art. II, § 2, cl. 2.

The district court next held that the Secretary properly supervises the agency's ALJs as inferior officers. The court reasoned that while the Judicial Officer is

6

primarily responsible for reviewing ALJ decisions, "the Secretary can revoke his delegation of authority to the Judicial Officer at will at any time, and the Secretary can also take on the Judicial Officer's authority without revoking that delegation." JA105. The Secretary accordingly "'has considerable influence over whether an ALJ's decision becomes the final decision of the agency,' because he may, 'at his election, step in and act as the final appeals officer in any case.'" JA105 (quoting *Fleming v. USDA*, 987 F.3d 1093, 1103 (D.C. Cir. 2021)).

The court then rejected plaintiff's argument that ALJs are insulated from removal to an unconstitutional extent. JA107-108. The court acknowledged a circuit split on the question and concluded that plaintiff was unlikely to succeed on the issue "[b]ecause of inconsistencies in the caselaw and the lack of available precedent." JA108. It observed, however, that the ALJ's removal scheme "do[es] not appear to 'tie the President's hands and hinder his control over his subordinates.'" JA108 (alterations omitted) (quoting *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1133 (9th Cir. 2021)).

Finally, the district court held that plaintiff was unlikely to succeed on the merits of his argument that his alleged Horse Protection Act violation must be tried by a jury in an Article III court. JA108-112. The court noted that a jury trial may be required for claims created by statute that are "analogous" to suits at common law but rejected plaintiff's argument that the Act is analogous to a common law fraud claim. JA110. The court explained that the Act "does not require any false statements or

misrepresentation, nor does it require any injury to a third party." JA110 (quotation marks omitted). It further reasoned that violations of the Act can be adjudicated before an administrative agency because the statute involves public rights that did not exist at common law at the Founding. JA111 (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42, 51 (1989)).

**2.** Plaintiff moved this Court for an injunction pending appeal, seeking to enjoin the administrative hearing. *See* Injunction Mot. 1. This Court denied plaintiff's motion "for failure to satisfy the four-factor test" for preliminary injunctive relief set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). Order (Apr. 29, 2024).

**3.** The ALJ held the administrative hearing, which concluded on May 2, 2024. JA61-62. As of the date of this filing, the ALJ's decision has not yet issued.

## SUMMARY OF ARGUMENT

USDA commenced enforcement proceedings against plaintiff to determine whether he violated the Horse Protection Act, 15 U.S.C. §§ 1821-1831. Nearly 10 months later, plaintiff brought this federal court suit and sought a preliminary injunction. The district court correctly denied the motion because plaintiff has failed to demonstrate that he is likely to succeed on the merits of his claims and because the remaining preliminary injunction factors do not weigh in his favor.

**1.** The district court correctly held that each of plaintiff's assorted constitutional challenges lacks merit.

**a.** Plaintiff's contention that the USDA's Judicial Officer is an improperly appointed principal officer is unfounded. The Supreme Court has long held that an officer is "inferior" under the Appointments Clause if their "work is directed and supervised at some level by" a principal officer. *Edmond v. United States*, 520 U.S. 651, 663 (1997). That test is easily satisfied here. The Secretary promulgates procedural and substantive regulations that the Judicial Officer must follow. The Secretary may also remove the Judicial Officer at will and may revoke his delegation of authority to the Judicial Officer at any time. These constraints show that the Secretary exercises significant control over the Judicial Officer.

**b.** Plaintiff's argument that the Judicial Officer cannot serve as an inferior officer because his position was not created by an act of Congress is likewise without merit. We are unaware of any court decision adopting this argument and the text of the Appointments Clause directly refutes it. Article II, Section 2 provides that the positions of inferior officers "shall be established by Law" without any reference to Congress and further states that Congress may "vest the Appointment of such inferior Officers . . . in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. Here, Congress expressly granted the Secretary the authority "to designate officers . . . to whom functions may be delegated . . . and to assign appropriate titles to such officers." 7 U.S.C. § 2204-2. The Secretary created the position of Judicial Officer pursuant to that grant of authority. The Judicial Officer's position is therefore consistent with the Appointments Clause.

**c.** Plaintiff is wrong that USDA ALJs are not subject to sufficient supervision by a principal officer. ALJs must follow the Secretary's procedural and substantive regulations. And although the Secretary usually delegates review of ALJ decisions to the Judicial Officer, the Secretary may elect to act as the final appeals officer in any case and may remove the Judicial Officer at will. The D.C. Circuit rejected a similar argument, concluding with "little difficulty" that USDA ALJs are "inferior officers . . . subject to substantial oversight by the Secretary." *Fleming v. USDA*, 987 F.3d 1093, 1103 (D.C. Cir. 2021) (citation omitted).

**d.** Plaintiff's contention that he is entitled to a preliminary injunction because of his ALJ's removal protection is at odds with this Court's decision in *K & R Contractors, LLC v. Keene*, 86 F.4th 135 (4th Cir. 2023). This Court explained that, absent a showing that the removal protections had any effect on the challenged action, a plaintiff challenging the removal protections of ALJs is not entitled to any relief because "the actions of a lawfully appointed executive officer fulfilling the duties of his office are legitimate and enforceable, even if the President's authority to remove the officer was unconstitutionally limited during his tenure." *Id.* at 149. But plaintiff's challenge is meritless in any event, as other circuits have concluded. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1136 (9th Cir. 2021) (Department of Labor (DOL) ALJs); *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, -- F.4th --, 2024 WL 2822147, at *11 (10th Cir. June 4, 2024) (Consumer Product Safety Commission (CPSC) ALJs).

**e.** Plaintiff's final argument that his alleged Horse Protection Act violations must be adjudicated before a jury in Article III court is unavailing. The Supreme Court has given Congress significant latitude to assign the adjudication of public rights to administrative agencies. Adjudications under the Act involve public rights that Congress has created and thus are beyond the scope of the Seventh Amendment. Plaintiff is also wrong that his alleged violation is nothing more than a repackaged common law fraud claim. The Act serves a distinct purpose—animal protection— and requires different elements from common law fraud.

**2.** The remaining preliminary injunction factors cut against injunctive relief. Plaintiff has failed to establish that irreparable harm is likely in the absence of an injunction. The ALJ has already held a hearing in this matter and plaintiff has not identified any concrete injury caused by waiting for the ALJ's decision. Plaintiff's unadorned assertion that he suffers an ongoing irreparable injury because he is a respondent in an ongoing administrative action is belied by the fact that he waited nearly 10 months to file suit after the USDA commenced enforcement proceedings against him.

Finally, the balance of equities and the public interest further counsel against the extraordinary relief plaintiff seeks. The public interest supports enforcing legitimate laws that implicate a matter of public importance. Congress enacted the Act to end the unnecessary and cruel practice of soring horses and enforcement of those protections serves the public interest.

## STANDARD OF REVIEW

The denial of a preliminary injunction is reviewed for abuse of discretion. *See Di Biase v. SPX Corp.*, 872 F.3d 224, 229 (4th Cir. 2017). This Court reviews the district court's factual findings for clear error and its legal conclusions de novo. *Id.*

## ARGUMENT

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To justify that relief, a plaintiff must show that it is "likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 20. Plaintiff fails to meet his burden at each step.

## I. Plaintiff has failed to show that he is likely to succeed on the merits.

Plaintiff has failed to make the requisite showing that he is likely to succeed on the merits of any of his novel constitutional claims.

### A. The Judicial Officer is a properly appointed inferior officer.

**1.** The Appointments Clause governs how the President may appoint officers who assist him in carrying out his responsibilities. U.S. Const. art. II, § 2, cl. 2. There are two types of officers under the Appointments Clause. Principal officers must be appointed by the President with the advice and consent of the Senate, while inferior

officers may be appointed by an agency department head. *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 143 (4th Cir. 2023).

There is no dispute that the USDA's Judicial Officer has been appointed by the Secretary in conformity with the requirements for inferior officers. But plaintiff argues (at 16) that the Judicial Officer is a principal officer and, thus, not properly appointed. That contention lacks merit.

An officer is "inferior" under the Appointments Clause if their "work is directed and supervised at some level by" principal officers. *Edmond v. United States*, 520 U.S. 651, 663 (1997) (quotation marks omitted). "Under *Edmond*, courts examine three factors in applying that test," none of which is dispositive: "(i) whether the officer is subject to supervision and oversight by a principal officer; (ii) whether the officer is subject to removal by a principal officer; and (iii) whether the officer has final decisionmaking authority." *Fleming v. USDA*, 987 F.3d 1093, 1103 (D.C. Cir. 2021). As the district court correctly recognized, the Judicial Officer is subject to the Secretary's supervision in numerous ways and is therefore an inferior officer under the Appointments Clause. JA100-102.

*First*, the Judicial Officer exercises only the authority delegated to him by the Secretary—authority to act as an adjudicator under the Horse Protection Act and other statutes. 7 C.F.R. § 2.35(a). The Secretary retains the ability to revoke this delegation and adjudicate these matters personally. *Id.* § 2.12. Thus, the Judicial Officer has "no power to render a final decision on behalf of the United States unless

13

permitted to do so by [an]other Executive officer[],” demonstrating the Secretary’s authority over the Judicial Officer’s work. *United States v. Arthrex, Inc.*, 594 U.S. 1, 14 (2021) (quoting *Edmond*, 520 U.S. at 665). And the Secretary “has authority to rescind at any time the [Judicial Officer’s] regulations,” giving the Secretary the “control” to ensure that the Judicial Officer properly acts as “an inferior officer.” *In re Grand Jury Investigation*, 916 F.3d 1047, 1052-53 (D.C. Cir. 2019).

*Second*, the Judicial Officer must obey the Secretary’s regulations governing adjudicatory procedures, *see* 60 Fed. Reg. 8446 (Feb. 14, 1995), and the Secretary’s substantive regulations implementing the Horse Protection Act, *see* 15 U.S.C. § 1828; 7 C.F.R. § 1.131. That authority to “prescribe uniform rules of procedure” is an additional tool of supervision and control, *Edmond*, 520 U.S. at 664 (quotation marks omitted); *see also Fleming*, 987 F.3d at 1103 (USDA ALJs “are subject to substantial oversight by the Secretary” because they “must follow the Secretary’s procedural and substantive regulations”).

*Third*, the Judicial Officer lacks any statutory tenure protections and may be removed by the Secretary at will. *See* 7 U.S.C. § 2204-2. That at-will removal authority is “a powerful tool for control” and grants the principal officer “administrative oversight over” inferior officers. *Edmond*, 520 U.S. at 664. Indeed, after “an officer is appointed, it is only the authority that can remove him, and not the authority that appointed him, that he must fear and, in the performance of his functions, obey.” *Bowsher v. Synar*, 478 U.S. 714, 726 (1986) (quotation marks

omitted). For that reason, Justice Scalia explained in his *Morrison v. Olson* dissent that the case would have been easily resolved if the independent counsel "were removable at will by the Attorney General" because "then she would be subordinate to him and thus properly designated as inferior." *Morrison v. Olson*, 487 U.S. 654, 716 (1988) (Scalia, J., dissenting).

These factors point decisively in favor of inferior-officer status even if individual decisions of the Judicial Officer are not directly reviewable by the Secretary. *See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341 (D.C. Cir. 2012). In *Intercollegiate*, the D.C. Circuit found the officers at issue to be inferior, even though they could make significant decisions without review by a principal officer, because they were removable at will. *Id.* at 1341-42. The Court explained that with "unfettered removal power, the [principal officer] will have the direct ability to direct, supervise, and exert some control over" subordinate judges authorized to issue final decisions of an agency. *Id.* at 1341 (quotation marks omitted). "Although individual [Copyright Royalty Judge] decisions w[ould] still not be directly reversible, . . . the threat of removal satisfie[d]" the D.C. Circuit "that the [Copyright Royalty Judges]' decisions will be constrained to a significant degree by a principal officer." *Id.* (citation omitted).

**2.** Plaintiff's argument to the contrary rests on the mistaken premise that the Supreme Court's decision in *Arthrex* abrogated the longstanding test in *Edmonds* by elevating one factor—final decision-making authority—over the others. *See* Br. 18-22.

*Arthrex* did no such thing.  The Supreme Court in *Arthrex* made clear that it was "reaffirm[ing] and apply[ing] the rule from *Edmond* that the exercise of executive power by inferior officers must at some level be subject to the direction and supervision of" a principal officer.  *Arthrex*, 594 U.S. at 27; *see Bahlul v. United States*, 77 F.4th 918, 927-28 (D.C. Cir. 2023) (rejecting argument that "the *Arthrex* decision departed from the three-factor approach of *Edmond*").  Indeed, the majority in *Arthrex* followed *Edmond* by considering the degree of oversight and removability in addition to final decision-making authority.  *Arthrex*, 594 U.S. at 13-18.  For example, it compared the degree of supervision of patent judges to that of the Coast Guard judges in *Edmond*, noting that "[l]ike the Judge Advocate General, the [Patent Trademark Office] Director possesses powers of 'administrative oversight.'"  *Id.* at 14 (quoting *Edmond*, 520 U.S. at 664).  And it considered removability, noting that the patent judges were not "'meaningfully controlled' by the threat of removal . . . because the Secretary can fire them after a decision only 'for such cause as will promote the efficiency of the service.'"  *Id.* at 17 (citation omitted) (quoting 5 U.S.C. § 7513(a)).  While the Court assigned significant weight to whether the patent judges' decisions were reviewable by a principal officer, it expressly stated that its holding did not "set forth an exclusive criterion" to distinguish principal and inferior officers.  *Id.* at 23 (quoting *Edmond*, 520 U.S. at 661).

   *Arthrex* in any case considered substantially different restrictions on the principal officer's supervisory authority from those present here.  *Arthrex* identified an

Appointments Clause violation when confronted with an unprecedented arrangement in which agency adjudicators were *statutorily* protected from removal and were vested with *statutory* authority to issue final decisions of the agency which could not be unilaterally reviewed by the agency head.  *See* 594 U.S. at 17, 23-25; 5 U.S.C. § 7513(a) (removal protections); 35 U.S.C. § 6(c) (statutory bar on unilateral review).  Under those circumstances, which were without "historical precedent," *Arthrex*, 594 U.S. at 22, the Supreme Court held that the Constitution forbids "enforcement of *statutory* restrictions on" a principal officer "that insulate the decisions of [inferior officers] from his direction and supervision," *id.* at 27 (emphasis added).

   *Arthrex*'s reasoning does not extend to the entirely distinguishable circumstances of a Judicial Officer who lacks removal protections and whose authority is conferred entirely by regulations and, thus, is entirely derivative of the Secretary.  Rather, the Judicial Officer falls comfortably within the historical precedents that *Arthrex* distinguished and approved, under which Congress had traditionally "left the structure of administrative adjudication up to agency heads, who prescribed internal procedures (and thus exercised direction and control) as they saw fit."  *Arthrex*, 594 U.S. at 19; *see also id.* at 20 (distinguishing any scheme in which the principal officer has statutory authority to "implement a system for reviewing" the decisions of subordinate adjudicators).  That describes USDA's review system, whereby the Secretary maintains full control of determining whether to delegate matters to the Judicial Officer or whether to hear cases himself.  7 C.F.R. § 2.12 ("No

delegation of authority by the Secretary . . . shall preclude the Secretary . . . from exercising any of the authority so delegated."); *see also In re Palo Alto Networks, Inc.*, 44 F.4th 1369, 1375-76 (Fed. Cir. 2022) (holding that delegation of review authority to inferior officers was compatible with *Arthrex*).

And critically, *Arthrex* did not suggest that inferior officers, like the Judicial Officer, who are removable at will by the Department Head somehow lack appropriate supervision. To the contrary, *Arthrex* distinguished adjudicators who render final decisions but "who appear to serve at the pleasure of the appointing department head" as not encompassed by its holding. 594 U.S. at 21. Indeed, though the Supreme Court ultimately opted for a different remedy, it expressly left open the possibility that allowing for "at-will removal by the Secretary would cure the constitutional problem." *Id.* at 26.

**3.** Plaintiff separately argues that the Judicial Officer cannot serve as an inferior officer because his office is created by regulation, rather than by statute. Br. 29-32. The Appointments Clause contains no such requirement. Article II, Section 2 provides that Congress "may by Law vest the Appointment of such inferior Officers" in Department Heads. U.S. Const. art. II, § 2, cl. 2. This provision thus requires that Congress enact a statute to grant a Department Head appointment authority but does not state that the inferior office itself must be created by statute. Indeed, the Appointments Clause further provides that such offices "shall be established by Law," *id.*, without any reference to Congress. And as this Court has explained, "the plain

meaning of 'law' includes regulations having the force and effect of law." *United States v. Mitchell*, 39 F.3d 465, 468 (4th Cir. 1994). Regulations with the force of law may therefore properly create an office.

Here, Congress vested in the Secretary the authority to create the position of the Judicial Officer and to appoint an employee of USDA to that role. *See* 7 U.S.C. § 2204-2. Under Section 2204-2,

> Whenever the Secretary of Agriculture deems that the delegation of the whole or any part of any regulatory function which the Secretary is[] . . . required or authorized to perform will result in the more expeditious discharge of the duties of the Department of Agriculture, he is authorized to make such delegation to any officer or employee designated under this section. The Secretary is authorized to designate officers or employees of the Department to whom functions may be delegated under this section and to assign appropriate titles to such officers or employees.

*Id.* The Secretary created the position of Judicial Officer pursuant to this grant of authority. 7 C.F.R. § 2.35. The position of Judicial Officer is accordingly "established by law" and thus consistent with the Appointments Clause.

The position of Judicial Officer is hardly unique in that respect. Indeed, many offices are created by regulation. The Board of Immigration Appeals (BIA), which issues final decisions in nearly all removal cases, is a creature solely of regulation. 8 C.F.R. § 1003.1. Instead of casting doubt on that structure, *Arthrex* affirmatively cited it as an example of inferior officers who were constitutionally subordinate to an agency head. 594 U.S. at 20 (citing 8 C.F.R. § 1003.0(a)). And the Ninth Circuit recently rejected an Appointments Clause challenge to the BIA, holding that its

members are properly appointed inferior officers, in part, because "Congress authorized the Attorney General to enact the *regulations* establishing the BIA." *Duenas v. Garland*, 78 F.4th 1069, 1073 n.2 (9th Cir. 2023) (emphasis added). Similarly, the Sixth Circuit has held that Secretary of Labor properly appointed the inferior officers of the Administrative Review Board, whose offices were created by regulation. *Varnadore v. Secretary of Labor*, 141 F.3d 625, 631 (6th Cir. 1998). So too, the Appeals Council within the Social Security Administration (SSA) is a creature of regulation that takes final agency action in nearly all disputed claims for benefits. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). The Appeals Council does so based on delegated authority from the Commissioner of Social Security. *Id.* at 107 (collecting regulations). That exercise of authority is constitutional because regulations may create inferior offices, which can be abolished by rescinding the regulation. *In re Sealed Case*, 829 F.2d 50, 56-57 (D.C. Cir. 1987) (holding that independent counsel was properly appointed as an inferior officer pursuant to regulation).

Plaintiff is wrong that inferior officers must hold offices created by statute under "[l]ongstanding Supreme Court precedent." Br. 29 (first citing *Lucia v. SEC*, 585 U.S. 237, 247-48 (2018); and then citing *Burnap v. United States*, 252 U.S. 512, 516-18 (1920)). The Supreme Court has never so held. To the contrary, *Lucia* held that ALJs within the Securities and Exchange Commission (SEC) hold an office "established by law," pointing both to statutes and to regulations governing their "career appointment." 585 U.S. at 247-48 (quoting 5 C.F.R. § 930.204(a)) (citing 5

U.S.C. § 3105).  And *Burnap* did not address the constitutional requirements for creating an office.  The Court instead addressed whether a landscape architect had been properly fired by the Chief of Engineer and held he had because Congress had vested the relevant appointment and removal authority in the Chief of Engineers (not the Secretary of War, who was the relevant Department Head).  252 U.S. at 518 (citing *Revised Statutes of the United States, Passed at the First Session of the Forty-Third Congress, 1873-'74*, § 1799, at 319 (2d ed. 1878)).

**4.**  Plaintiff also contends that the Judicial Officer cannot be an inferior officer because it would leave USDA ALJs with a constitutionally insufficient level of supervision.  *See* Br. 32-36.  This contention is equally meritless.  As plaintiff appears to recognize (at 33-34), USDA ALJs are supervised by both the Secretary and the Judicial Officer.  That readily resolves any constitutional concerns.  Accordingly, the D.C. Circuit rejected a similar argument, concluding with "little difficulty" that USDA ALJs are "inferior officers" "subject to substantial oversight by the Secretary." *Fleming*, 987 F.3d at 1103.

Plaintiff nonetheless insists that ALJs are inadequately supervised because the Secretary cannot remove the ALJs at will.  We address below the separate contention that ALJ removal protections are unconstitutional.  *See infra* pp. 23-27.  But to the extent that plaintiff's argument here is not ultimately cumulative of his challenge to the removal protections, it suffers from at least two defects.

As an initial matter, plaintiff does not appear to contest that ALJs are meaningfully supervised by the Judicial Officer authorized to review their decisions. Plaintiff assumes that this supervision is constitutionally inadequate unless the Judicial Officer is a principal officer, but he cites no authority for his assumption that it is unconstitutional for an inferior officer to be supervised by a second inferior officer, the latter of whom is directly supervised by a principal officer. Plaintiff merely cites *Arthrex* for the proposition that inferior officers must be "supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." Br. 33 (quoting *Arthrex*, 594 U.S. at 13). But nothing in *Arthrex* suggests that the requisite "some level" of supervision cannot be exercised through an official who occupies an intermediate place on the agency organization chart. Because the Secretary adequately supervises the Judicial Officer, *see supra* p. 13-15, and the Judicial Officer supervises the ALJ, *Arthrex* is satisfied.

In any case, the Secretary has ample and constitutionally sufficient means of directly supervising the ALJs. As the D.C. Circuit explained, while ALJs are not removable at will by the Secretary, "the analysis hardly ends there." *Fleming*, 987 F.3d at 1103. For one thing, ALJs must follow the Secretary's procedural and substantive regulations. *See* 15 U.S.C. § 1528; 7 C.F.R. § 1.131. For another, "the Secretary may, at his election, step in and act as final appeals officer in any case." *Fleming*, 987 F.3d at 1103 (citing 7 C.F.R. § 2.12). And although the Secretary usually delegates review of ALJ decisions to the Judicial Officer, the Secretary can revoke this delegation of

authority at any time and may also remove the Judicial Officer at will. 7 U.S.C. § 2204-2.

Plaintiff mistakenly relies on the Sixth Circuit's decision in *Utica Packing Co. v. Block*, 781 F.2d 71 (6th Cir. 1986), for the proposition that the Secretary cannot review the decisions of USDA ALJs in place of the Judicial Officer without running afoul of the Due Process Clause. Br. 35-36. As the district court explained, *Utica Packing* concerned an unacceptable appearance of bias when the Secretary "replaced a [J]udicial [O]fficer *after* the [J]udicial [O]fficer had already rendered a final decision in a case" and then "petitioned the [J]udicial [O]fficer's replacement for reconsideration of the case to achieve an outcome favorable to the Secretary." JA106 (emphasis added) (citing *Utica Packing*, 781 F.2d at 75-78). Nothing in *Utica Packing* stands for the general proposition that the Secretary violates a party's due process rights each time he chooses to exercise the authority delegated to the Judicial Officer.

## B.  The removal protections for USDA ALJs are constitutional.

**1.** Plaintiff argues (at 36-37) that USDA ALJs are impermissibly shielded from removal. But as this Court recently recognized, it does not need to decide the merit of this contention to conclude that it is not a proper basis for affording relief.

In *K & R Contractors*, 86 F.4th at 135, this Court considered an analogous challenge to the removal protections of a DOL ALJ. This Court explained that "[a] constitutional defect in the procedure for removing [an executive] officer—unlike a defect in his appointment—is 'no basis for concluding' that he 'lacked the authority to

23

carry out the functions of the office.'" *Id.* at 149 (quoting *Collins v. Yellen*, 141 S. Ct. 1761, 1788 (2021)). "Rather, the actions of a lawfully appointed executive officer fulfilling the duties of his office are legitimate and enforceable, even if the President's authority to remove the officer was unconstitutionally limited during his tenure." *Id.*

Therefore, "a party who has successfully challenged an unconstitutional removal restriction is not entitled" to injunctive relief "absent reason to believe that the unconstitutional removal provision itself inflicted harm." *K & R Contractors*, 86 F.4th at 149. This Court explained that an unconstitutional removal provision "could inflict compensable harm" if, for example, "the President had attempted to remove [the officer] but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal" or the President "asserted that he would remove [the officer] if the [for-cause removal] statute did not stand in the way." *Id.* (first alteration in original) (quotation marks omitted). Neither of those circumstances is present here, and plaintiff does not contend otherwise. Plaintiff is therefore "not entitled to any relief on its removal protections claim" against USDA ALJs, and this Court accordingly need not reach the merits of his constitutional argument. *Id.* at 150.

**2.** In any event, ALJs lawfully possess removal protections, as several other courts of appeals have indicated. *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1136 (9th Cir. 2021) (DOL ALJs); *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, -- F. 4th --, 2024 WL 2822147, at *11 (10th Cir. June 4, 2024) (CPSC ALJs); *see also Calcutt v. Federal Deposit Ins. Corp.*, 37 F.4th 293, 319 (6th Cir. 2022) (expressing "doubt Calcutt could

24

establish a constitutional violation from the ALJ removal restrictions"), *summ. rev'd on other grounds*, 598 U.S. 623 (2023) (per curiam). *But see Jarkesy v. SEC*, 34 F.4th 446, 464 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023). The Supreme Court has repeatedly held that inferior officers (like ALJs) may lawfully possess a degree of protection against removal. *See United States v. Perkins*, 116 U.S. 483, 485 (1886) (upholding a removal restriction that required the Secretary of the Navy to make a misconduct finding or convene a court-martial before removing a naval officer during peacetime); *Morrison*, 487 U.S. at 685-93 (upholding a "good cause" removal restriction for an independent counsel appointed to investigate and prosecute certain high-ranking executive officers (quotation marks omitted)). And in *Arthrex*, the Supreme Court even specifically selected a remedy for an Appointments Clause defect that *restored* the statutory removal protections of a group of administrative adjudicators. *See* 594 U.S. at 25.

Plaintiff's attack on the removal protections of USDA ALJs hinges on his assertion that ALJs enjoy *multiple* layers of removal protection, which plaintiff believes would constitute a per se constitutional violation under *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010). But the Secretary of Agriculture is removable at will by the President, and, accordingly, ALJs are not shielded by vertically integrated removal protections. Plaintiff emphasizes that ALJs are removable based on good cause "established and determined" by the MSPB, whose Board Members also enjoy a measure of removal protection. *See* 5 U.S.C. § 7521; *id.*

§ 1202(d). But it is the employing agency (here, USDA) that makes the policy decision of whether an ALJ should be removed—not the MSPB itself. *See SSA v. Levinson*, 2023 M.S.P.B. 20, ¶¶ 37-38 (July 12, 2023). The MSPB's role is confined to determining whether the employing agency has demonstrated the good cause necessary to support the removal. Such independent adjudication of whether cause for removal has been established does not represent an additional layer of removal restrictions. *Cf. Morrison*, 487 U.S. at 693 n.33 (finding no "constitutional problem" in "judicial review of the removal decision" because the "possibility of judicial review does not inject the Judicial Branch into the removal decision, nor does it, by itself, put any additional burden on the President's exercise of executive authority").

Even if the MSPB were somehow thought to comprise a second layer of protection, plaintiff would still be wrong to assert that this case is "[j]ust like" *Free Enterprise Fund*. Br. 38. In fact, *Free Enterprise Fund* expressly reserved the question of whether its holding would apply to ALJs. 561 U.S. at 507 & n.10; *Leachco*, 2024 WL 2822147, at *12 ("The Court in *Free Enterprise Fund* explicitly stated that its holding, which struck down double-layered tenure protections for [Public Company Accounting Oversight Board (PCAOB)] members, did not address the constitutionality of similar tenure protections for inferior officers who perform adjudicative functions, including ALJs."). With good reason. ALJs adjudicating individual cases bear no resemblance to the PCAOB at issue in *Free Enterprise Fund*, which possessed "expansive powers to govern an entire industry." 561 U.S. at 485; *see*

*also id.* at 508 (the PCAOB "is the regulator of first resort and the primary law enforcement authority for a vital sector of [the] economy"). The PCAOB's sweeping regulatory and enforcement authority was also coupled with unusually stringent removal protections, far stricter than those afforded ALJs. *See id.* at 506 (ALJs and other "employees referenced by the dissent" do not "enjoy the same significant and unusual protections . . . as members of the [PCAOB]"); *see also id.* at 502-03 (explaining that PCAOB members were not subject to an "'ordinary' dual for-cause standard," but a "rigorous" and "unusually high" one). Plaintiff fails to explain why *Free Enterprise Fund* should be extended to the very different context of ALJ removal protections, thereby upending longstanding provisions that afford subordinate adjudicators a measure of decisional independence.

### C. The USDA's adjudication process does not violate the Seventh Amendment or Article III.

The district court also correctly concluded that plaintiff is unlikely to succeed on his final two claims, which contend that USDA's administrative-adjudication system violates his right to a jury trial under the Seventh Amendment and infringes on the federal judiciary's purview under Article III. *See* JA108-112; Br. 38-44.

Although plaintiff invokes both the Seventh Amendment and Article III, precedent from the Supreme Court and this Court make clear that the Seventh Amendment only preserves the jury trial right in proceedings in court and is inapplicable to matters properly assigned to adjudication before an administrative

tribunal.  *See, e.g., Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S.

325, 345 (2018) (recognizing that "when Congress properly assigns a matter to

adjudication in a non-Article III tribunal, 'the Seventh Amendment poses no

independent bar to the adjudication of that action by a nonjury factfinder'" (quoting

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53-54 (1989))); *Sasser v. Administrator, U.S.

EPA*, 990 F.2d 127, 129-30 (4th Cir. 1993).  This is true even though Congress may

permissibly authorize the imposition of remedies in an administrative proceeding,

including civil monetary penalties, that would require consideration by a jury were the

matter heard in Court.  *See Atlas Roofing Co. v. Occupational Safety & Health Review

Comm'n*, 430 U.S. 442, 450-55 (1977).  Plaintiff concedes as much.  *See* Br. 38-39, 38

n.2 (acknowledging that he can only prevail on the Seventh Amendment claim if the

adjudication "cannot be assigned to a tribunal other than an Article III court").

The only question, then, is whether Congress was constitutionally precluded

from assigning the adjudication of alleged violations of the Horse Protection Act to

an administrative tribunal.  It was not.  For matters involving so-called "public rights,"

the Supreme Court has "given Congress significant latitude to assign adjudication of

[such] rights to entities other than Article III courts."  *Oil States*, 584 U.S. at 334; *accord

In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  "[P]ublic rights" are

"those arising 'between the Government and persons subject to its authority in

connection with the performance of the constitutional functions of the executive or

legislative departments.'"  *Stern v. Marshall*, 564 U.S. 462, 489 (2011) (quoting *Crowell v.

*Benson*, 285 U.S. 22, 50 (1932)).  They are rights "integrally related to particular Federal Government action," such as where "resolution of the claim by an expert Government agency is deemed essential to a limited regulatory objective," and where "the claim at issue derives from a federal regulatory scheme."  *Id.* at 490-91.

USDA adjudications under the Horse Protection Act involve public rights and are thus assignable to a non-Article III tribunal (where the Seventh Amendment is inapplicable).  In enacting the Act in 1970, Congress used its constitutional "power to regulate commerce among the several States," *Atlas Roofing*, 430 U.S. at 456; 15 U.S.C. § 1822, to "help end the unnecessary and inhumane practice of soring horses," H.R. Rep. No. 91-1597, at 3 (1970); *see also* 15 U.S.C. § 1822(1) (legislative finding that "the soring of horses is cruel and inhumane").  To that end, Congress "created new statutory obligations," provided penalties for violations, and entrusted to the Secretary "the function of deciding whether a violation has in fact occurred."  *Atlas Roofing*, 430 U.S. at 450; *cf. Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 518 F.2d 990, 1008 (5th Cir. 1975) (citing the Horse Protection Act as one of the "numerous statutes permitting civil penalties to be imposed by the administrative agency" without running afoul of the right to a jury trial), *aff'd*, 430 U.S. 442 (1977).

Plaintiff nonetheless asserts that the proceeding to determine whether he has violated the Act must be tried before a jury because it is "effectively a common law fraud claim."  Br. 41.  This argument is irrelevant because Congress's power to assign an enforcement proceeding to a non-Article III tribunal does not depend on the

extent to which that proceeding resembles common-law actions. As the Supreme Court explained in *Granfinanciera*, "Congress may fashion causes of action that are closely analogous to common-law claims and place them beyond the ambit of the Seventh Amendment by assigning their resolution to a forum in which jury trials are unavailable." 492 U.S. at 52 (emphasis omitted). In *Atlas Roofing*, for example, the Supreme Court held that an agency could conduct adjudications to enforce workplace-safety rules, even though workplace-safety disputes historically were resolved through "common-law actions for negligence and wrongful death." 430 U.S. at 445. Similarly, in *Sasser*, this Court concluded that adjudications of Clean Water Act violations "clearly involve[] statutory public rights" and may be heard before an administrative tribunal without a jury, in light of a "congressional declaration that the goals of the Act are the restoration and maintenance of the integrity of the nation's waters." 990 F.2d at 130.[1]

Plaintiff's argument that the Horse Protection Act violation at issue here is analogous to a common law fraud claim also fails on its own terms. A common law

---

[1] In *Jarkesy*, 34 F.4th at 454, a divided panel of the Fifth Circuit held that SEC enforcement actions implicate the right to a jury trial because they are "analogous" to common law fraud actions. That analysis is wrong for the reasons explained by the dissent, *id.* at 466-73 (Davis, J., dissenting). And in *Jarkesy*, the majority distinguished SEC fraud cases from Occupational Safety and Health Administration claims for civil penalties, where the government's right to relief was "exclusively a creature of statute" and "distinctly public in nature." *Id.* at 458 (majority opinion). To the extent this Court deems it relevant, the Horse Protection Act is more analogous to the Occupational Safety and Health Administration provisions than the SEC provisions.

fraud claim requires the plaintiff to "show, *inter alia*, that the defendant made a false representation for the purpose of defrauding the plaintiff." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 782 (4th Cir. 2013) (quotation marks omitted). The Act, by contrast, prohibits the exhibition "of any horse which is sore." 15 U.S.C. § 1824(2). Nothing in the statute requires an intent to deceive. Indeed, Congress enacted the Act for the public purpose of protecting horses from the "cruel and inhumane" practice of soring, not to prevent horse owners from fraud. *Id.* § 1822(1); *see also McConnell v. USDA*, No. 4:23-cv-24, 2023 WL 5963782, at *6 (E.D. Tenn. Sept. 13, 2023) (finding that the Horse Protection Act "is not analogous to common-law claims for fraud"). Accordingly, plaintiff's Article III and Seventh Amendment claims lack merit.

## II. Plaintiff fails to satisfy the remaining preliminary injunction factors.

While plaintiff has failed to show a likelihood of success on the merits, the remaining preliminary injunction factors provide a separate and independent basis for affirming the district court's decision.

**1.** A plaintiff seeking a preliminary injunction must show that he is likely to suffer irreparable harm if such relief is not granted. *Frazier v. Prince George's County*, 86 F.4th 537, 543 (4th Cir. 2023) (citing *Winter*, 555 U.S. at 20). Indeed, "the basis of injunctive relief in the federal courts has always been irreparable harm." *Direx Isr., Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (alteration omitted)

(quoting *Samson v. Murray*, 415 U.S. 61, 88 (1974)).  The harm must be "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm."  *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7-8 (D.C. Cir. 2016) (alteration omitted) (quotation marks omitted).

Plaintiff's only alleged irreparable injury is that he will be subject to USDA administrative proceedings, which he claims are "unconstitutionally structured."  Br. 46 (quotation marks omitted).  Plaintiff asserts that under *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), plaintiffs suffer irreparable harm whenever they are subjected "to an unconstitutionally structured decisionmaking process."  Br. 46 (quotation marks omitted).  But *Axon* had nothing to do with the irreparable harm standard for preliminary injunctive relief.  Rather, *Axon* addressed only whether a court has jurisdiction to consider a constitutional challenge to an agency proceeding without waiting for a final agency decision.  598 U.S. at 180.  The Supreme Court did not say that the "here-and-now" injury giving rise to such jurisdiction would necessarily merit preliminary injunctive relief in every case.  *See Leachco*, 2024 WL 2822147, at *7 ("*Axon* does not help Leachco establish irreparable harm because *Axon* did not address the issue of irreparable harm, or any other issue regarding entitlement to injunctive relief."); *Meta Platforms, Inc. v. FTC*, Civil Action No. 23-3562 (RDM), 2024 WL 1121424, at *10 (D.D.C. Mar. 15, 2024) ("A 'here-and-now injury' [under *Axon*] is not, as Meta suggests, synonymous with an irreparable injury.").

Moreover, this Court has held that in the context of an alleged constitutional violation, the irreparable harm factor "is 'inseparably linked' to the likelihood of success on the merits." *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). Because plaintiff is unlikely to succeed on the merits for the reasons discussed above, he is not entitled to any presumption of irreparable harm.

It is also well settled that a movant's delay in seeking injunctive relief militates against a finding of irreparable harm. *See Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75 (4th Cir. 1989); *see also Gordon v. Holder*, 632 F.3d 722, 725 (D.C. Cir. 2011) (explaining that delay "may support a conclusion that the plaintiff cannot satisfy the irreparable harm prong"). That is because such relief is "generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985). USDA commenced administrative proceedings against plaintiff in May 2023. Yet plaintiff waited more than nine months to file this federal court lawsuit seeking to enjoin those proceedings. As the district court explained in denying plaintiff's motion for a temporary restraining order, this delay is difficult to square with plaintiff's claim of irreparable injury. JA85. While plaintiff may respond that his hearing before USDA was not scheduled until February 29, 2024, he "has known that he may be subjected to an adjudication process he alleges unconstitutional since the USDA complaint

33

against him was filed on May 19, 2023," yet still "waited nearly ten months to file" this suit. JA85.

**2.** The balance of equities and the public interest, which "merge" where relief is sought against the federal government, *Nken v. Holder*, 556 U.S. 418, 435 (2009), also counsel against the extraordinary relief plaintiff seeks. The public interest supports enforcing legitimate laws that implicate a matter of public importance. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). Congress enacted the Horse Protection Act to "help end the unnecessary and inhumane practice of soring horses[]. . . . [T]he bill[] . . . should destroy the incentive . . . for owners and trainers to painfully mistreat these magnificent animals." H.R. Rep. No. 91-1597, at 3. "Preventing the abuse of horses by swift enforcement of the [Horse Protection Act] is clearly in the public interest[] . . . ." *McConnell*, 2023 WL 5963782, at *7. Enjoining the administrative proceedings at issue would frustrate those objectives and is therefore contrary to the public interest.

Moreover, the public interest does not favor an injunction that would implicate agencies throughout the federal government. *See Miranda v. Garland*, 34 F.4th 338, 366 (4th Cir. 2022) (vacating preliminary injunction that would cause a "sea change" in federal immigration bond hearings); *Decker Coal Co.*, 8 F.4th at 1137 (observing that finding ALJ tenure protections unconstitutional "would have potentially catastrophic effects . . . throughout the federal government"). Plaintiff advances novel constitutional arguments that, if adopted by this Court, would not be limited in scope

to USDA and could lead to a "sea change" in administrative enforcement proceedings. *Miranda*, 34 F.4th at 366. This further counsels in favor of denying preliminary injunctive relief and hearing this suit in the normal course.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

SANDRA J. HAIRSTON
*United States Attorney*

JOSHUA M. SALZMAN

/s/ Graham White
GRAHAM WHITE
*Attorneys, Appellate Staff*
*Civil Division, Room 7230*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4052*

June 2024

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,855 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Graham White*
Graham White

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*s/ Graham White*
Graham White

# ADDENDUM

# TABLE OF CONTENTS

7 U.S.C. § 2204-2 ............................................................................................ A1

7 C.F.R. § 2.12 ................................................................................................ A2

7 C.F.R. § 2.35 ................................................................................................ A3

## 7 U.S.C. § 2204-2

## Delegation of regulatory functions to designated employees; status of employees; revocation of delegation

Whenever the Secretary of Agriculture deems that the delegation of the whole or any part of any regulatory function which the Secretary is, now or after April 4, 1940, required or authorized to perform will result in the more expeditious discharge of the duties of the Department of Agriculture, he is authorized to make such delegation to any officer or employee designated under this section. The Secretary is authorized to designate officers or employees of the Department to whom functions may be delegated under this section and to assign appropriate titles to such officers or employees. There shall not be in the Department at any one time more than two officers or employees designated under this section and vested with a regulatory function or part thereof delegated under this section. The Secretary may at any time revoke the whole or any part of a delegation or designation made by him under this section.

**7 C.F.R. § 2.12**

**Secretary and general officers not precluded from exercising delegated powers.**

No delegation of authority by the Secretary or a general officer contained in this part shall preclude the Secretary or general officer from exercising any of the authority so delegated.

# 7 C.F.R. § 2.35

## Judicial Officer.

(a) Pursuant to the Act of April 4, 1940, as amended (7 U.S.C. 450c–450g), and Reorganization Plan No. 2 of 1953 (5 U.S.C. app.), the Secretary of Agriculture makes the following delegations of authority to the Judicial Officer. The Judicial Officer is authorized to:

(1) Act as final deciding officer in adjudicatory proceedings subject to 5 U.S.C. 556 and 557;

(2) Act as final deciding officer in adjudicatory proceedings which are or may be subject to the "Rules of Practice Governing Formal Adjudicatory Proceedings Instituted by the Secretary Under Various Statutes" set forth in part 1, subpart H, of this title;

(3) Act as final deciding officer in adjudicatory proceedings which are or may be subject to the "Rules of Practice Governing Cease and Desist Proceedings Under Section 2 of the Capper–Volstead Act" set forth in part 1, subpart I, of this title;

(4) Act as final deciding officer in adjudicatory proceedings subject to the "Procedures Related to Administrative Hearings Under the Program Fraud Civil Remedies Act of 1986" set forth in part 1, subpart L, of this title;

(5) Act as final deciding officer in adjudicatory proceedings subject to the "Rules of Practice Governing Adjudication of Sourcing Area Applications and Formal Review of Sourcing Areas Pursuant to the Forest Resources Conservation and Shortage Relief Act of 1990 (16 U.S.C. 620, et seq.)" set forth in part 1, subpart M, of this title;

(6) Act as final deciding officer in rate proceedings under the Packers and Stockyards Act, as amended and supplemented (7 U.S.C. 181–229);

(7) Act as final deciding officer in reparation proceedings under statutes administered by the United States Department of Agriculture;

(8) Act as final deciding officer in appeals under section 63 of the Plant Variety Protection Act (7 U.S.C. 2443), and in reexamination proceedings under section 91 of the Plant Variety Protection Act, as amended (7 U.S.C. 2501);

(9) Act as final deciding officer in adjudicatory proceedings under section 359i of the Agricultural Adjustment Act of 1938, as amended (7 U.S.C. 1359ii);

(10) Issue rules of practice applicable to proceedings conducted under section 359i of the Agricultural Adjustment Act of 1938, as amended (7 U.S.C. 1359ii);

(11) Act as final deciding officer in adjudicatory proceedings subject to the "Rules of Practice Governing Proceedings on Petitions To Modify or To Be Exempted From Marketing Orders" set forth in sections 900.50 through 900.71 of this title;

(12) Act as final deciding officer in adjudicatory proceedings subject to the "Rules of Practice Governing Proceedings on Petitions to Modify or To Be Exempted from Research, Promotion, and Information Programs" set forth in part 1200, subpart B, of this title; and

(13) Act as final deciding officer in adjudicatory proceedings subject to "Appeals of Quality Control ('QC') Claims" set forth in part 283 of this title.

(b) The delegation of authority from the Secretary of Agriculture to the Judicial Officer in paragraph (a) of this section shall not be construed to limit the authority of the Judicial Officer to perform any functions, in addition to those identified in the Act of April 4, 1940, as amended (7 U.S.C. 450c–450g), which may be assigned by the Secretary of Agriculture to the Judicial Officer.

(c) As used in this section, the term Judicial Officer shall mean any person or persons so designated by the Secretary of Agriculture.