

February 5, 2025

Nwamaka Anowi
United States Court of Appeals
Fourth Circuit
Office of the Clerk
1100 East Main Street, Suite 501
Richmond, VA 23219

Re:     Notice of Supplemental Authority: *Manis v. USDA*, No. 24-1367

Dear Ms. Anowi:

Appellant Joe Manis submits this Rule 28(j) letter to advise the Court of the attached February 1, 2025, Initial Decision and Order issued by a USDA Administrative Law Judge in HPA Docket No. 23-J-0044 (the "Initial Decision"), the administrative proceeding that Manis seeks to enjoin in the above-captioned appeal.

The ALJ's decision underscores the urgency of resolving Manis's constitutional claims. The decision imposes two penalties on Manis: (1) a $10 civil penalty, and (2) a one-year industry-wide disqualification that would bar him from "showing, exhibiting or entering any horse" or "participating in any horse show, horse exhibition, or horse sale or horse auction." Initial Decision at 11. This decision is not yet final as Manis has 30 days to file an appeal with USDA's Judicial Officer, 7 C.F.R. §§ 1.145, 2.27(a)(1), which he intends to do. There is no deadline for the Judicial Officer's decision. *Id*. § 1.145. As such, the adjudication remains ongoing and this Court can still provide Manis the relief he seeks— a preliminary injunction of USDA "from pursuing an alleged violation of the [HPA] against Mr. Manis in USDA's unconstitutional internal adjudication process (HPA Docket. No. 23-J-0044)." JA031–032; Doc 18 at 47.

Additionally, the imposition of only a $10 penalty in the Initial Decision does not moot Manis's Seventh Amendment claim. USDA "'retains the authority and capacity'" to impose civil penalties over $20 in HPA cases. *Porter v. Clarke*, 852 F.3d 358, 364–65 (4th Cir. 2017); Doc. 26-2 at 1. This does not satisfy the "formidable standard" UDSA must meet in carrying its "'burden to establish' that it cannot reasonably be expected to resume *its* challenged conduct." *FBI v. Fikre*, 601 U.S. 234, 243 (2024). Regardless, Manis's Article III claim remains unaffected.

Notice of Supplemental Authority
*Manis v. USDA*, No. 24-1367
February 5, 2025
Page 2

This development warrants prompt resolution of Manis's appeal while USDA's administrative process remains ongoing. Once the administrative process concludes with a final decision from the Judicial Officer, Manis's subjection to the unconstitutional tribunal "cannot be undone." *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 191 (2023).

Respectfully submitted,

_/s/ *Joshua M. Robbins*_
Joshua M. Robbins
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
(202) 945-9524
jrobbins@pacificlegal.org

*Counsel for Appellant*

cc: All Counsel of Record

Notice of Supplemental Authority
*Manis v. USDA*, No. 24-1367
February 5, 2025
Page 3

## CERTIFICATE OF COMPLIANCE AND SERVICE

I hereby certify that the body of this letter is 334 words. I relied on my word processor, Microsoft Word, to obtain the count.

I hereby certify that on February 5, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

                                            /s/ *Joshua M. Robbins*
                                            Joshua M. Robbins

UNITED STATES DEPARTMENT OF AGRICULTURE
BEFORE THE SECRETARY OF AGRICULTURE

In re:

Joe Manis, an individual,

Respondent.

HPA Docket No. 23-J-0044

# Initial Decision and Order

Appearances:

*Bianca Ricketts, Esq., and John V. Rodriguez, Esq., each with the Office of the General Counsel, United States Department of Agriculture, Room 2338 South Building Stop 1413, 1400 Independence Ave SW, Washington, DC 20250-1413, representing the Administrator, Animal and Plant Health Inspection Service, United States Department of Agriculture (frequently "APHIS" or Complainant); and*

*Thomas B. Kakassy, Esq., PO Box 2436, Gastonia, NC 28053, for the Respondent Joe Manis.*

Decision Summary.

After careful consideration of the evidence as a whole, I conclude that the horse My Chance of Cash was sore within the meaning of the Horse Protection Act while he was being inspected pre-show at a horse show on May 20, 2022. The horse show officials were correct not to allow My Chance of Cash to compete, based on the pre-show inspection results found by the United States Department of Agriculture Veterinary Medical Officer who was assigned to inspect horses participating in the horse show.

I conclude that the Horse Protection Act was violated when My Chance of Cash was entered into the horse show, which leads to a remedy (the Horse Protection Act is a remedial Act). I impose the remedy against the owner of the horse My Chance of Cash, the Respondent Joe Manis, for violating 15 U.S.C. § 1824(2)(D) of the Horse Protection Act. The remedy I impose requires Respondent Joe Manis to pay a ten dollar ($10) civil penalty, authorized by

section 1825(b) of the Horse Protection Act (15 U.S.C. § 1825(b)); and to be disqualified for one year, authorized by section 1825(b) of the Horse Protection Act (15 U.S.C. § 1825(b)). This case arose on pre-show inspection of a horse at a horse show on May 20, 2022, in Chatham, Virginia. The horse, a stallion, was My Chance of Cash. The horse show was the Virginia Walking Racking Horse Owners Association Horse Show.

This civil, adjudicatory, administrative proceeding, brought on behalf of the Secretary of Agriculture by the Administrator of the Animal and Plant Health Inspection Service, United States Department of Agriculture (frequently "APHIS" or "the Agency" or Complainant), is governed by the Horse Protection Act as amended (15 U.S.C. § 1821 et seq.) (frequently "Horse Protection Act" or "HPA"); the Horse Protection Regulations (9 C.F.R. § 11.1 et seq.) ("frequently Regulations"); and the Rules of Practice Governing Formal Adjudicatory Proceedings Instituted by the Secretary Under Various Statutes (7 C.F.R. § 1.130 et seq.) (frequently "Rules of Practice").

This HPA Docket, No. 23-J-0044, regards the Respondent, Joe Manis, an individual. The Complainant is the Administrator of the Animal and Plant Health Inspection Service, United States Department of Agriculture.

My Chance of Cash was tender to palpation during the pre-show inspection in a manner that required the United States Department of Agriculture Veterinary Medical Officer to find noncompliance with the Horse Protection Act requirements, so the horse show officials chose, correctly, to excuse My Chance of Cash and not permit him to compete.

Three witnesses to My Chance of Cash's condition while he was being inspected pre-show (immediately before he would have gone into the show arena on May 20, 2022), testified

2

during a Hearing held on April 30 through May 2, 2024. These three witnesses were the trainer of My Chance of Cash (who was the custodian during inspection), the horse show Designated Qualified Person, and a United States Department of Agriculture Veterinary Medical Officer who was assigned to inspect horses participating in the Virginia Walking Racking Horse Owners Association Horse Show. The USDA video captured the pre-show inspection and adds persuasive evidence to the testimony of the three witnesses who were present during the inspection and the two additional witnesses: the horse's owner (the Respondent, Joe Manis, an individual), and the APHIS Agency Representative (Dr. Aaron Rhyner, an Assistant Director with Animal Care, APHIS).

<u>My Analysis Will Follow My Findings of Fact and Conclusions.</u>

Before detailing my Analysis that Respondent Joe Manis allowed the entry of a horse he owned, known as My Chance of Cash, for the purpose of showing the horse on May 20, 2022 in the Virginia Walking Racking Horse Owners Association Horse Show in Chatham, Virginia, I present my Findings of Fact and Conclusions.

<u>Findings of Fact.</u>

Respondent Joe Manis (full name Joe Dan Manis) was (and still is) a resident of North Carolina.

At all times mentioned herein, Respondent Joe Manis was a "person" and an "exhibitor," as those terms are defined in the Horse Protection Regulations at 9 C.F.R. § 11.1.

On May 20, 2022, Respondent Joe Manis was the owner of the horse "My Chance of Cash."

On May 20, 2022, Ricky Abee was the trainer of the horse "My Chance of Cash" and was the custodian of "My Chance for Cash" during pre-show inspection at a horse show.

3

On May 20, 2022, the horse "My Chance of Cash" was entered by Ricky Abee for the purpose of showing in class 8, entry 900, in the Virginia Walking Racking Horse Owners Association Horse Show, a horse show in Chatham, Virginia.

On May 20, 2022, the horse "My Chance of Cash" was presented by Ricky Abee for pre-show inspection.

On May 20, 2022, Designated Qualified Person Timothy Toler conducted a pre-show inspection of "My Chance of Cash" and did not find "My Chance of Cash" to be non-compliant with the Horse Protection Act.

Dr. Amy Adams, a United States Department of Agriculture Veterinary Medical Officer, inspected horses participating in the Virginia Walking Racking Horse Owners Association Horse Show in May 2022, for compliance with the Horse Protection Act.

On May 20, 2022, immediately following Designated Qualified Person Timothy Toler's pre-show inspection, Dr. Amy Adams conducted a pre-show inspection of the horse "My Chance of Cash" and found "My Chance of Cash" to be non-compliant with the Horse Protection Act.

Dr. Amy Adams, while inspecting the horse "My Chance of Cash's" LEFT front limb by looking and feeling and then palpating with her thumb, found that the horse showed one area of consistent and repeatable pain response as she indicated on APHIS Form 7077, and the pain response was evidenced by the horse making mild and moderate withdrawal reactions by attempting to pull his leg away when she palpated the caudo-lateral aspect of the pastern. Transcript 68, APHIS Form 7077 and Declaration (CX 6). Caudo-lateral is pictured on the APHIS Form 7077 as neither the front nor the back of the left front limb pastern, but rather

4

the side, the outside side (lateral), near the back.

Dr. Amy Adams, while inspecting the horse "My Chance of Cash's" RIGHT front limb, by looking and feeling and then palpating with her thumb, found that the horse showed multiple areas of consistent and repeatable pain response as indicated on APHIS Form 7077, and the pain response was evidenced by the horse making moderate to severe attempts to pull his leg away in multiple areas over the medial aspect of the posterior pastern; and moderate to severe attempts to pull his leg away over the medial aspect of the anterior pastern. Transcript 69, APHIS Form 7077 and Declaration (CX 6). Medial aspect of the posterior pastern and medial aspect of the anterior pastern are pictured on the APHIS Form 7077 as both the front and the back of the right front limb pastern, toward the inside (medial).

Dr. Amy Adams observed additional responses during palpation from "My Chance of Cash" beyond attempts to pull his leg away, that led her to the conclusion that "My Chance of Cash" was sore, including shifting his weight to the back end and/or moving a back leg a little more under him; and there were times when he raised his head at the exact moment she was palpating and he withdrew his limb. Transcript 91-92.

Blanching the thumbnail (making it turn white) to obtain the prescribed pressure for palpation during inspection of a horse is more easily accomplished when the thumb is less flat and more angled into the horse. See cross-examination of Dr. Amy Adams, Transcript 98-99, 104-105, regarding the fleshy part of the thumb, the pad of the thumb. Dr. Amy Adams palpated correctly with a flat thumb, that is, the fleshy part of the thumb, the pad of the thumb, as I was able to observe during portions of the USDA video.

"My Chance of Cash" was tender to palpation during pre-inspection at the horse show in a

5

manner that required Dr. Amy Adams to find noncompliance with the Horse Protection Act requirements. Horse show management acquiesced in Dr. Amy Adams' finding and did not permit "My Chance of Cash" to compete.

Based upon her May 20, 2022, inspection of "My Chance of Cash" Dr. Adams found bilateral sensitivity, that the horse "My Chance of Cash" was non-compliant with the Horse Protection Act, and that the horse "My Chance of Cash" was "sore" within the meaning of the Horse Protection Act.

<u>Conclusions</u>.

The Secretary of Agriculture has jurisdiction over the parties and the subject matter. Congress provided for enforcement of the Horse Protection Act by the Secretary of Agriculture.

The Horse Protection Act, as amended, is in Title 15 of the United States Code, Chapter 44. Horse Protection Regulations are in Title 9 of the Code of Federal Regulations, Part 11.

The Horse Protection Act provides persons alleged to have civil violations of the Act with the right to be given notice and the opportunity for a "hearing before the Secretary."

Alleged criminal violations of the Horse Protection Act are filed for adjudication by Article III judges, not filed with the USDA Hearing Clerk to be heard by presiding employees of the Department of Agriculture.

The Secretary of Agriculture delegates authority to Administrative Law Judges ("ALJs") pursuant to the Administrative Procedure Act to hold hearings and perform related duties in civil, adjudicatory, administrative proceedings, such as this. The Administrative Procedure Act is found in Title 5 of the United States Code, 5 U.S.C. § 556, and refers to presiding

6

employees including but not limited to ALJs. See also 5 U.S.C. § 557.

Significant is the Secretary of Agriculture's designation found in the Rules of Practice at 7 C.F.R. § 2.27. The Secretary designated certain authority to "hold hearings and perform related duties in proceedings" to the Office of Administrative Law Judges. In part, this designation entails the authority, within the scope and applicability of the Rules of Practice, for ALJs "to make initial decisions in adjudication and rate proceedings" such as this civil, adjudicatory, administrative proceeding arising under the HPA.

The Respondent Joe Manis filed his "Motion to Dismiss" on February 22, 2024; and the Complainant APHIS filed "Complainant's Response to Respondent's Motion to Dismiss" on March 11, 2024. All issues addressed therein are preserved for appeal to higher authorities than I. I lack the authority to decide these issues.

The parties raised additional issues in their post-hearing briefs that I lack the authority to decide. These issues also are preserved for appeal to higher authorities than I.

On May 20, 2022, "My Chance of Cash" was entered in class 8, entry 900, at the Virginia Walking Racking Horse Owners Association Horse Show in Chatham, Virginia.

"My Chance of Cash" was "sore," as that term is defined in the Horse Protection Act, when entered on May 20, 2022, at the Virginia Walking Racking Horse Owners Association Horse Show in Chatham, Virginia.

On May 20, 2022, Respondent Joe Manis allowed the entry of a horse he owned, known as "My Chance of Cash," for the purpose of showing the horse in the Virginia Walking Racking Horse Owners Association Horse Show in Chatham, Virginia, while the horse was sore, in violation of 15 U.S.C. § 1824(2)(D).

7

The Respondent Joe Manis should be and hereby is required to pay a ten dollar ($10) civil penalty authorized by section 1825(b) of the Horse Protection Act (15 U.S.C. § 1825(b)). The Respondent Joe Manis should be and hereby is required to serve a one-year period of disqualification authorized by section 1825(b) of the Horse Protection Act (15 U.S.C. § 1825(b)).

Analysis.

Timothy Toler Testimony.

Timothy Toler was under hire by a Horse Industry Organization (frequently HIO) as a licensed Designated Qualified Person (frequently DQP) when he inspected the horse My Chance of Cash at the Virginia Walking Racking Horse Owners Association Horse Show in Chatham, Virginia on May 20, 2022. The Hearing was nearly 2 years later, so Timothy Toler's memory needed refreshing. Timothy Toler reviewed information he had created and kept in his mobile phone and testified that he believed, during this horse show, he personally wrote 22 tickets (disqualifying a horse) and did not write a ticket for My Chance of Cash. Timothy Toler reviewed a show management form Manager Notification of HPA Inspection Results and testified that he believed, during this horse show, 8 more horses had been disqualified by the USDA in addition to the 22 horses he personally disqualified.  Timothy Toler testifed that it was his duty to notify a horse's custodian of disqualification. The show management form showed specifics for Dr. Amy Adams' findings of non-compliance with the Horse Protection Act regarding My Chance of Cash: "BS" (bilateral sensitivity); informed by "AA" (Amy Adams); and "Manager TOP" (Tim O. Toler). During his own inspection of My Chance of Cash, which preceded Dr. Amy Adams' inspection, Designated

8

Qualified Person Timothy Toler did not find My Chance of Cash to be non-compliant with the Horse Protection Act.

Transcript, 241- 326.

<u>Ricky Abee Testimony</u>.

Ricky Abee presented the horse My Chance of Cash for pre-show inspection (custodian) and had entered him under class 8, entry 900, in the Virginia Walking Racking Horse Owners Association Horse Show, a horse show in Chatham, Virginia, for the purpose of showing, on May 20, 2022.

Ricky Abee described My Chance of Cash's characteristic of not tolerating much messing with his back feet. He pulls his back foot forward, to try to get you to let go of it. Ricky Abee clearly loves My Chance of Cash and all horses, and Ricky Abee describes My Chance of Cash as sensitive, and that My Chance of Cash recalls what was bothering him, a horsefly, for example. Ricky Abee testified about action devices saying he likes to train gaited horses with four-ounce chains, so that in a show with six-ounce chains he may add a little more animation to his horse. Ricky Abee described holding My Chance of Cash with a loose rein while Tim Toler inspected. Ricky Abee testified that My Chance of Cash does not bite, that he was not an unruly horse. Ricky Abee said Tim Toler said to him, "You're good to go." And that Dr. Adams then said, "Can I check your horse?" We then watched the USDA video of Dr. Adams' inspection of My Chance of Cash with Ricky Abee narrating his observations. Ricky Abee expressed his concerns, while we all watched the USDA video intently, more than once. Ricky Abee testified he was not stewarding the horse (distracting him), just trying to be close enough to see Dr. Adams hands and arms. When I asked Ricky

9

Abee about the withdrawal responses we saw from My Chance of Cash, Ricky Abee acknowedged that My Chance of Cash's movements in response to Dr. Adams' palpation eliminated the horse from showing because the horse did not pass pre-inspection. Ricky Abee did not accept the notion that My Chance of Cash was sore. Ricky Abee: "But the horse did move. I knew he didn't - - I know he did not move from pain. He moved, but I can't say what he moved for, and I don't think that none of us can say positively why he moved, or what he moved for. But to my knowledge he did not move from pain." Transcript, 366 - 530.

<u>USDA video of pre-show inspection of My Chance of Cash</u>.

Repeated watching of the USDA video, including when commentary was provided by Dr. Amy Adams and when commentary was provided by Dr. Aaron Rhyner, persuades me that that the horse My Chance of Cash was sore within the meaning of the Horse Protection Act while he was being inspected pre-show on May 20, 2022. My Chance of Cash was tender to palpation in a manner that required Dr. Amy Adams, the United States Department of Agriculture Veterinary Medical Officer, to find noncompliance with the Horse Protection Act requirements. The horse show officials chose, correctly, to excuse My Chance of Cash and not permit him to compete. The pre-show inspection is one of the acts of entering a horse show. I conclude that the Horse Protection Act was violated when My Chance of Cash was entered into the horse show. On May 20, 2022, Respondent Joe Manis allowed the entry of a horse he owned, known as My Chance of Cash, for the purpose of showing the horse in the Virginia Walking Racking Horse Owners Association Horse Show in Chatham, Virginia, while the horse was sore, in violation of 15 U.S.C. § 1824(2)(D).

10

My Findings and Conclusions precede this Analysis.

Order.

Respondent Joe Manis is assessed a civil penalty of ten dollars ($10), which shall be paid by certified check or money order made payable to order of "Treasurer of the United States". Respondent Joe Manis shall write the docket number of this proceeding (HPA Docket No. 23-J-0044), on the certified check or money order. Respondent Joe Manis shall send his payment by mail or a next-business-day delivery service through a commercial carrier such as FedEx or UPS WITHIN 30 days from the date this Decision and Order becomes final (see paragraph below under Finality) to:

USDA-APHIS-GENERAL (HPA Docket No. 23-J-0044)
PO Box 979043
St. Louis, Missouri 63197-9000

If this Decision and Order is appealed to the USDA Judicial Officer, the deadline for Respondent Joe Manis to send his payment will be determined by further proceedings. Respondent Joe Manis is disqualified for one year, beginning when this Decision and Order becomes final (see paragraph below under Finality), from showing, exhibiting or entering any horse, directly or indirectly through any agent, employee, corporation, partnership, business or other device, and from judging, managing or otherwise participating in any horse show, horse exhibition, or horse sale or horse auction. "Participating" means engaging in any activity beyond that of a spectator and includes, without limitation, transporting or arranging for the transportation of horses to or from equine events, personally giving instructions to exhibitors, being present in the warmup or inspection areas or in any area where spectators are not allowed, and financing the participation of others in equine events.

11

Finality

This Decision and Order becomes final and effective 35 days after service of this Decision and Order on Respondent Joe Manis, unless appealed to the USDA Judicial Officer by a party to the proceeding by filing with the Hearing Clerk within 30 days after service, pursuant to section 1.145 of the Rules of Practice (7 C.F.R. § 1.145, see Appendix A enclosed).

Copies of this Decision and Order shall be served by the Hearing Clerk on each of the parties.

Issued this first day of February 2025



Jill S Clifton
2025.02.01 07:11:15
-05'00'

Jill S. Clifton
Administrative Law Judge


Enclosure: Appendix A

Hearing Clerk
United States Department of Agriculture
Stop 9203, South Building, Room 1031-S
1400 Independence Ave SW
Washington DC 20250-9203
Phone: 1-202-720-4443
Fax:    1-844-325-6940
sm.oha.HearingClerks@usda.gov

12

**APPENDIX A**

**7 C.F.R.**:

TITLE 7—-AGRICULTURE

SUBTITLE A—-OFFICE OF THE SECRETARY OF AGRICULTURE

PART 1—-ADMINISTRATIVE REGULATIONS

. . . .

SUBPART H—-RULES OF PRACTICE GOVERNING FORMAL ADJUDICATORY PROCEEDINGS INSTITUTED BY THE SECRETARY UNDER VARIOUS STATUTES

. . .

**§ 1.145   Appeal to Judicial Officer.**

(a)   *Filing of petition*.  Within 30 days after receiving service of the Judge's decision, if the decision is a written decision, or within 30 days after issuance of the Judge's decision, if the decision is an oral decision, a party who disagrees with the decision, any part of the decision, or any ruling by the Judge or who alleges any deprivation of rights, may appeal the decision to the Judicial Officer by filing an appeal petition with the Hearing Clerk.  As provided in § 1.141(h)(2), objections regarding evidence or a limitation regarding examination or cross-examination or other ruling made before the Judge may be relied upon in an appeal.  Each issue set forth in the appeal petition and the arguments regarding each issue shall be separately numbered; shall be plainly and concisely stated; and shall contain detailed citations to the record, statutes, regulations, or authorities being relied upon in support of each argument.  A brief may be filed in support of the appeal simultaneously with the appeal petition.

(b)   *Response to appeal petition*.  Within 20 days after the service of a copy of an appeal petition and any brief in support thereof, filed by a party to the proceeding, any other party may file with the Hearing Clerk a response in support of or in opposition to the appeal and in such response any relevant issue, not presented in the appeal petition, may be raised.

(c)   *Transmittal of record*.  Whenever an appeal of a Judge's decision is filed and a response thereto has been filed or time for filing a response has expired, the Hearing Clerk shall transmit to the Judicial Officer the record of the proceeding.  Such record shall include:  the pleadings; motions and requests filed and rulings thereon; the transcript or recording of the testimony taken at the hearing, together with the exhibits filed in connection therewith; any documents or papers filed in connection with a pre-hearing conference; such proposed findings of fact, conclusions, and orders, and briefs in support thereof, as may have been filed in connection with the proceeding; the Judge's decision; such exceptions, statements of objections and briefs in support thereof as may have been filed in the proceeding; and the appeal petition, and such briefs in support thereof and responses thereto as may have been filed in the proceeding.

Appendix A

   (d)  *Oral argument*.  A party bringing an appeal may request, within the prescribed time for filing such appeal, an opportunity for oral argument before the Judicial Officer.  Within the time allowed for filing a response, appellee may file a request in writing for opportunity for such an oral argument.  Failure to make such request in writing, within the prescribed time period, shall be deemed a waiver of oral argument.  The Judicial Officer may grant, refuse, or limit any request for oral argument.  Oral argument shall not be transcribed unless so ordered in advance by the Judicial Officer for good cause shown upon request of a party or upon the Judicial Officer's own motion.

   (e)  *Scope of argument*.  Argument to be heard on appeal, whether oral or on brief, shall be limited to the issues raised in the appeal or in the response to the appeal, except that if the Judicial Officer determines that additional issues should be argued, the parties shall be given reasonable notice of such determination, so as to permit preparation of adequate arguments on all issues to be argued.

   (f)  *Notice of argument; postponement*.  The Hearing Clerk shall advise all parties of the time and place at which oral argument will be heard.  A request for postponement of the argument must be made by motion filed a reasonable amount of time in advance of the date fixed for argument.

   (g)  *Order of argument*.  The appellant is entitled to open and conclude the argument.

   (h)  *Submission on briefs*.  By agreement of the parties, an appeal may be submitted for decision on the briefs, but the Judicial Officer may direct that the appeal be argued orally.

   (i)  *Decision of the [J]udicial [O]fficer on appeal*.  As soon as practicable after the receipt of the record from the Hearing Clerk, or, in case oral argument was had, as soon as practicable thereafter, the Judicial Officer, upon the basis of and after due consideration of the record and any matter of which official notice is taken, shall rule on the appeal.  If the Judicial Officer decides that no change or modification of the Judge's decision is warranted, the Judicial Officer may adopt the Judge's decision as the final order in the proceeding, preserving any right of the party bringing the appeal to seek judicial review of such decision in the proper forum.  A final order issued by the Judicial Officer shall be filed with the Hearing Clerk.  Such order may be regarded by the respondent as final for purposes of judicial review without filing a petition for rehearing, reargument, or reconsideration of the decision of the Judicial Officer.

[42 FR 743, Jan. 4, 1977, as amended at 60 FR 8456, Feb. 14, 1995; 68 FR 6341, Feb. 7, 2003]

7 C.F.R. § 1.145

 Appendix A